KONTA, Appellant, v. ST. LOUIS STOCK EX-
CHANGE et al.

Division One, May 24, 1905.

1. **IDENTICAL ASSOCIATIONS:** Reorganization.   Where the
members of an old unincorporated exchangé association, in.
forming a new organization, framed and adopted a new constitu-
tion and by-laws, changed the amount payable as dues, elected
officers of the new association, and transferred the assets of the
old to the new, it cannot be maintained that the two are identi-
cal, and that a member of the old by reason of such membership
became a member of the new without signing its constitution
and by-laws and paying the dues which they fixed.

2. **UNINCORPORATED EXCHANGE:** Membership:  Right  of
Members.   A voluntary association of individuals united, with-
out a charter from the State, in an organization for the purpose
of affording its members facilities for the transaction of the bus-
iness as brokers in stocks and securities, operated upon a con-
stitution, rules and by-laws, which measured the duties, rights
and privileges of each member as such. *Held,* that the constitu-
tion, rules and by-laws constitute the contract of membership,
and no person can invoke the benefits of the contract or incur
any liability thereunder unless he assents to such contract; and
where a person who was a member of an old exchange, which
was dissolved, its members having the right to become mem-
bers of the new exchange, which was organized in its stead,
neither assents to the constitution, rules and by-laws of the new,
nor assents to its organization, nor paid dues to it, he cannot
afterwards, by offering to pay past dues, compel the new associ-
ation to receive him as a member.

3. ——: ——: ——: Expulsion: Estoppel: Knowledge.  No
one can set up another's act or conduct as an estoppel unless
he has been misled or deceived thereby; and if he knew noth-
ing about the act of the other, he was not deceived or misled
thereby.  Where a member of an old voluntary exchange, which
had been merged into a new one, neither assented to the organ-.
ization of the new exchange, nor assented to its constitution,
rules and by-laws under which it operated, nor paid dues
therein, he cannot set up that the new company is estopped to
deny he was ever a member by the fact that, on his failure to
pay dues, it suspended him for a time and later expelled him.

4. ——: ——: **Expulsion: Waiver.** A member of a voluntary
unincorporated exchange, who was illegally suspended for fail-
ure to pay dues, is bound, within a reasonable time after obtain-
ing knowledge of such expulsion, to assert his rights; otherwise,
he will be deemed to have consented to such expulsion. If at
the time he was expelled memberships were worthless, he can
not wait more than a year after obtaining knowledge of his ex-
pulsion, and then, after memberships have become of very large
value, compel a reinstatement of himself.

5. ——: ——: ——: **Reinstatement: Payment of Dues.** He
who seeks the aid of an equity court to compel a reinstatement
of himself as a member of a voluntary unincorporated exchange
must allege and show that he paid or tendered all dues payable
before and after his expulsion, or that he made application to
pay them and they were refused, or that there was a refusal to
state what the amount due was.

Appeal from St. Louis City Circuit Court.—*Hon. H. D.
Wood,* Judge.

Affirmed.

*Nathan Frank, Gerrit H. Ten Broek* and *Max W.
Oliver* for appellant.

(1) The attempt of the board of directors to expel
Konta and forfeit his membership was ineffectual and
in no way affected his rights as a member. (a) The
rules governing the procedure necessary to suspend a
member and forfeit his membership, were never com-
plied with, since Konta was declared suspended for
non-payment of dues before due notice was given of
the action about to be taken, or in fact before he re-
ceived notice of any kind. Under the circumstances
actual notice was necessary to bind Konta in any way
by the proceedings. Ryan v. Kelley, 9 Mo. App. 396;
Gruenewald v. Ind. Order of Israel, 34 N. Y. Supp. 675.
(b) In the absence of any notice and an opportunity
to be heard in his defense, no action of the members,
whether in accordance with its own by-laws or not,
could in any way affect Konta's rights in his member-
ship, which is a species of property and under the pro-

tection of the law of the land.   Mulroy v. Knights of Honor, 28 Mo. App. 470; Ludowiski v. Benevolent Society, 29 Mo. App. 337; Slater v. Supreme Lodge, 76 Mo. App. 387; Farmer v. Kansas City Board of Trade, 78 Mo. App. 564; Seehorn v. Catholic Knights of America, 95 Mo. App. 233; Ryan v. Cudahay, 49 L. R. A. 353 (157 Ill. 108).   (c)   The change in residence or absence of a member of such association in no way removes the necessity of service of notice before expulsion.   Wachtel v. Widows' and Orphans' Society, 84 N. Y. 28.   (2)   The St. Louis Stock Exchange was a continuance under another name and new rules of the St. Louis Bond & Stock Brokers' Association, which organizations were identical, and membership in the one *ipso facto* constituted membership in the other. Thomp., Corp., sec. 256; Miller v. English, 21 N. J. L. 317; Agr. Soc. v. Hunter, 110 Ill. 155.   (3)   Where an individual has been expelled from membership in a voluntary association of the character of a stock or produce exchange, contrary to the by-laws of the association and the laws of the land, and the property interests of the member are affected, a court of equity will interfere to restore the membership. Ryan v. Cudahay, 157 Ill. 108.   (a)   The proper remedy in such a case is injunctive relief restraining the officers or the members of the association from interfering with the petitioner in his enjoyment of all the rights and privileges of membership.   Albers v. Merchants' Exchange, 39 Mo. App. 583; R. S. 1899, sec. 3649. (b) Konta returned to St. Louis as soon as his business interests abroad would permit, and asserted his rights promptly; his delay of one year was justified under the facts in the case, and in any event in no way militated against the interests of the St. Louis Stock Exchange or enabled him to gain an unconscionable advantage of any kind. Butler v. Lawson, 72 Mo. 227; Murdock v. Sproule, 72 Mo. 503; Real Estate Co. v. Lindell, 142 Mo. 61; Bliss on Equity (6 Ed.), sec. 42.

*Judson & Green* and *Edward S. Robert* for respondents.

(1) Appellant was never a member of the respondent association. A man must agree to become a member of such an organization before he can become a member. The relation is one of contract. It is only as contracts that the constitutions of such associations are in the least obligatory, and upon each member's contract, whereby he consents to be bound, are his correlative duties and rights as a member measured. Austin v. Searing, 16 N. Y. 112; Belton v. Hatch, 109 N. Y. 593; Wickes v. Monihan, 130 N. Y. 232; Heath v. President of Gold Exchange, 7 Abl. Pr. N. S. 251. (2) The organization of the respondent was essentially distinct from that of the St. Louis Bond & Stock Brokers' Association. (3) There is no merit whatever in the contention of appellant that the St. Louis Stock Exchange is estopped from denying his membership. The claim of estoppel lacks the essential element that appellant was led by the conduct of the exchange to alter injuriously his previous position. While there is no possible basis in the claim of estoppel, it is clear from an examination of the facts that the claim that the exchange made appellant a member is wholly unfounded and involves a distortion of the facts. (a) The plan of organization assumed that those of the former association should have the privilege of becoming members. In other words, the door was left open for those who were willing to enter. (b) The organization was effected in the summer of 1899, and each member was required to sign the constitution and by-laws. (c) The subsequent action of the directors, that is, in the resolution of suspension on January 9, 1900, and of finally formally expelling him in July, 1900, was in effect but the closing of the door which had theretofore been left open; in other words, he was dropped from the rolls because of his refusal to assume the obligations of mem-

bership. (4) Assuming that appellant was a member, he was bound to know the provisions of the constitution and by-laws, and to know that his dues were due and payable. Bacon on Benefit Socs., sec. 81; Niblack on Benefit Socs., p. 34; Bower v. Knights of Pythias., 102 Iowa 262; Burton v. Soc. of Detroit, 28 Mich. 261; Simeral v. Ins. Co., 18 Iowa 319; Walsh v. Ins. Co., 30 Iowa 133. It is not expected that proceedings of this character in voluntary unincorporated associations conducted by business men shall be governed with technical accuracy. Commonwealth v. Union League Club, 135 Pa. St. 131; Neukirch v. Keppler, 56 App. Div. 225, 67 N. Y. Supp. 710 (a Stock Exchange case); Moore v. National Council, 55 Kan. 452; Levy v. Magnolia Lodge, 110 Cal. 297; State ex rel. v. Odd Fellows, 8 Mo. App. 148; State ex rel. v. Medical Society, 91 Mo. App. 76. (5) Irrespective of the foregoing, appellant's right, if he had any, was in a court of law. The writ of injunction is an extraordinary and discretionary writ and will not be applied in the case of a voluntary association where the truth of an accusation involving expulsion or forfeiture of membership is admitted. State ex rel. v. Benevolent Ass'n, 42 Mo. App. 485; State ex rel. v. Medical Soc., 91 Mo. App. 76. (6) Apart from the foregoing, appellant's own unconscionable and inequitable conduct is fatal to any relief in a court of equity. He does not come into equity with clean hands. No man is entitled to the aid of a court of equity when that aid becomes necessary from his own fault. Creath's Admr. v. Sims, 5 How. 204; Dilly v. Barnard, 8 Gill & J. (Md.) 170; Scranton E. L. & H. Co.'s Appeal, 112 Pa. 154; Hill v. Mining Co., 119 Mo. 29; Cassaday v. Metcalf, 1 Mo. App. 601; Scudder v. Atwood, 55 Mo. App. 512; 1 Pomeroy's Eq. Jur., sec. 398. These admitted fundamental principles of equity are fatal to appellant's right of recovery: (a) In his laches in failing for nearly three years to assert

any right of membership; (b) In his delaying such assertion until the right had become valuable; (c) In his neither paying nor offering to pay any dues during this long period of three years.

BRACE, P. J.—This is an appeal from a judgment of the St. Louis City Circuit Court dissolving an injunction. After a careful consideration of the whole record, the able arguments of counsel, and the cases cited in support of their respective contentions, we find the facts of the case so fairly and clearly stated and the law governing it so aptly and admirably applied thereto in the opinion of Judge Horatio D. Wood, before whom it was tried, and for a copy of whose opinion we are under many obligations to counsel, that we take pleasure in adopting the same as the opinion of this court. The opinion of Judge Wood is as follows:

"In this case the plaintiff alleges that he is a stockbroker engaged in selling stocks in the city of St. Louis; that the defendant, the St. Louis Stock Exchange, is an unincorporated association of stock brokers, and that the other defendants named are officers thereof; that the St. Louis Stock Exchange was organized in 1896, and that plaintiff was one of the organizers of said organization; that he conducted his business as a stockholder on the floor of the Exchange until the latter part of 1899, when he left for a visit to Europe; that he returned on the 20th of April, 1902, and when about to exercise his rights as a member he was informed by the president of the defendant company that he had been expelled and that his membership had been forfeited, and that since that time he has been denied access to the floor and deprived of all benefits and profits of his membership; that the officers and agents assigned as a reason for the forfeiture of his membership that he had not paid any dues, and that plaintiff stated to the defendants that he had received no notice that any dues were assessed or were payable

but that he would nevertheless pay to the defendant, the St. Louis Stock Exchange, the dues alleged to have been levied and assessed against him which had not been paid during his absence in Europe, if the defendant, the St. Louis Stock Exchange, its officers and agents, would indicate what amount was due and payable, but that the defendant, the St. Louis Stock Exchange, refused to state what, if any, dues were levied and payable; that the defendant, the St. Louis Stock Exchange, failed to furnish him with any record of the proceedings alleged to have been had with respect to his alleged expulsion for non-payment of dues. He then alleges that all the actions and proceedings concerning his expulsion are illegal and void, and prays that the St. Louis Stock Exchange, its officers and members, be restrained from interfering with the exercise by plaintiff of his rights and privileges as a member of said St. Louis Stock Exchange, and that he be restored to his membership in the exchange.

"To this petition an answer was filed denying that the plaintiff is, or ever was, a member of the St. Louis Stock Exchange; that the St. Louis Stock Exchange was organized on the 1st of July, 1899, as a voluntary unincorporated association of individuals; that the plaintiff has never become a member of the St. Louis Stock Exchange by signing its by-laws; that the plaintiff was a member of a prior association known as the St. Louis Bond & Stock Brokers' Association, and that he was offered an opportunity to become a member of the defendant association by signing the constitution and by-laws, but he declined to avail himself thereof and failed to become a member of the defendant association.

"The answer further states that he was dropped from the rolls by reason of his failure to entitle himself to membership by signing the constitution and paying the dues aforesaid, and that although nearly three years have elapsed, during the entire time the plain-

tiff made no claim to membership and has never offered to comply with the conditions of membership in any manner whatever. It also alleges that even if plaintiff had become a member of the association, he was, in pursuance of the constitution and by-laws of the St. Louis Stock Exchange, legally suspended and expelled by reason of his failure to pay certain dues. With the answer is filed a motion to dissolve the injunction heretofore issued in this cause.

"The facts as shown by the testimony are that the plaintiff was a member of the St. Louis Bond & Brokers' Association, which was a voluntary unincorporated association organized in 1896, and which at that time and for sometime thereafter held its meetings on the floor of the Merchants' Exchange. Owing to the disadvantages and inconveniences to the business resulting from holding meetings on the floor of the Merchants' Exchange, the members of the St. Louis Bond & Stock Brokers' Association discussed the propriety of going elsewhere and establishing a new exchange. On March 28, 1899, the initial step was taken by the appointment of a committee to consider the advisability of establishing the St. Louis Stock Exchange, and the president of the St. Louis Bond & Stock Brokers' Association, of which the plaintiff was a member, appointed as such committee Messrs. Hodgman, Wasserman and Little.

"On April 4, 1899, a motion was adopted that the St. Louis Stock Exchange be established, and a committee was appointed to formulate a constitution, by-laws and rules for the new organization and find a place for the transaction of its business.

"On the same day, April 4, 1899, article VII of the by-laws of the association, of which plaintiff was a member, to-wit, the St. Louis Bond & Stock Brokers' Association, was amended, so as to make the annual dues $10, payable January 2d of each year, and the

committee appointed to consider the advisability of forming a stock exchange reported that it was advisable to establish the St. Louis Stock Exchange, and upon the report of this committee it was resolved to establish the St. Louis Stock Exchange.

"On August 17, 1899, a meeting of the members of the St. Louis Bond & Stock Brokers' Association, which will hereafter be referred to as the old association, was held, and the secretary and treasurer were authorized to transfer all money and property of the association to the secretary and treasurer of the St. Louis Stock Exchange.

"On the same date, August 17, 1899, a meeting of the members of the St. Louis Stock Exchange was held and the officers of the old association were elected to hold similar positions as officers of the new organization, and a constitution and by-laws of the new organization were adopted. These were signed by all the members of the old association except the plaintiff. By section 1, article V, of the by-laws of the new organization the dues were $40 per year, payable on the first day of January and July of each year. The testimony shows that all the members of the old organization were invited to join and had the privilege of joining the new organization if they desired to become members thereof.

"On October 10, 1899, at a meeting of the board of directors of the St. Louis Stock Exchange a motion was made and seconded 'that owing to the absence of Mr. Konta the measures adopted concerning unpaid dues and fees be not applied to him until his return to St. Louis.' The language 'measures adopted' in this resolution refers to the action of the board of directors on September 27, 1899, wherein a motion was adopted that all delinquents in fees and dues be given until Saturday, September 30, to pay the same or be suspended according to the rules.

"The last dues paid by Mr. Konta are shown by receipt dated January 31, 1899, said receipt being for the sum of $10 annual dues for 1899, and is signed, 'St. Louis Bond & Stock Brokers' Association, A. D. Grant, Secretary, $10.' This receipt on its face and by the amount paid shows that it was a payment for dues in the old organization.

"The members of the old organization moved their place of business previous to the formation of the St. Louis Stock Exchange from the Merchants' Exchange building, for we find that on June 30, 1899, they resolved that a meeting of members be held July 5 at 214 North Fourth street to act on the new constitution and by-laws. The old organization also held meetings in the Continental Bank building, and in 1901 the new organization, the St. Louis Stock Exchange, commenced to transact business at its present location.

"On January 9, 1900, a resolution was adopted by the board of directors of the St. Louis Stock Exchange as follows:

" 'The secretary is authorized to notify Mr. Konta that not having paid his dues, he is suspended from the Stock Exchange.'

'C. R. Drummond, Secretary.'

"And on page 27 of the record of the St. Louis Stock Exchange appears the following:

" 'July 11, 1900,·President Kotany reported to the board that Alexander Konta, a member of the exchange, was in arrears in his dues to the exchange; that Mr. Konta had been notified to pay the same, and that he had paid no attention to said notice, and that he was now in arrears for one year. After a full discussion Mr. Wasserman moved, seconded by Mr. Donaldson, that Mr. Konta's membership be declared forfeited in accordance with section 2, article V, of the by-laws of this exchange, and that the secretary be directed to strike Mr. Konta's name from the rolls and

Mr. Konta notified in writing that his membership had been declared forfeited by the board.   Carried.'

"The evidence shows that the plaintiff left St. Louis in May, 1899, and did not return to this city until April, 1902; that he knew of the design to form the new association when he left; that he knew it was contemplated to have independent quarters and to reorganize a new association.   He knew they had moved from the Merchants' Exchange before he left; that he never attended any of the preliminary meetings incident to the new organization; never signed the constitution and has never paid any license as a broker since he left the city in the year 1899, and that prior to 1901 he never authorized anyone to pay any dues for him in this city.

"In January and in July, 1900, a membership in the St. Louis Stock Exchange had no market value. The evidence shows that at the time this suit was instituted such a membership was worth from $7,500 to $8,000.

"Plaintiff states that he first learned that his membership might be forfeited in a letter written him by J. J. Mullally, dated May 13, 1901.   In this letter the writer asked for an assignment of his membership, and the only information respecting dues is that there were dues unpaid and that his membership 'will be forfeited in a short time unless same is paid.'   It will be noticed that this letter is subsequent to the action taken by the members of the St. Louis Stock Exchange forfeiting his membership.   Upon the receipt of this letter he mailed it to G. H. Ten Broek, instructing him to read it carefully, and upon receipt of plaintiff's letter Mr. Ten Broek  called upon Mr. J. H. Dieckman, vice president of the exchange.   Mr. Dieckman testified that Mr. Ten Broek called upon him and that he told him that the plaintiff had been dropped from the rolls for the non-payment of dues.   He testifies that Mr. Ten Broek did not offer to pay any dues, and the testimony of Mr.

Ten Broek does not disclose the fact that he made any such offer.

"The testimony shows that the plaintiff made no effort whatever to become a member of the new organization, although, as heretofore stated, he knew of its contemplated formation, and it further tends to show that he was really hostile to the old organization, one of the witnesses testifying that he stated to him that he desired to see it broken up. This statement, however, the plaintiff denies.

"It is evident from the petition that the theory of plaintiff in this case is that the St. Louis Bond & Stock Brokers' Association and the St. Louis Stock Exchange are identical, and the fact that plaintiff was a member of the old organization constituted him a member of the new organization. Such a theory is untenable. The evidence shows that the members of the old organization instead of amending the constitution of the old organization adopted a new constitution. They changed the amount payable as dues. They elected officers for the new association. They transferred the assets of the old association to the new association. All of which facts are inconsistent with the theory either that the associations were identical or that the new association was a mere continuation of the old organization under the original constitution and by-laws. In fact, in answer to the question, 'And didn't you know it was contemplated to reorganize and have a new association?' the plaintiff answered, 'Certainly.'

"If membership in the old organization did not, *ipso facto*, constitute the member a member of the new organization, did the plaintiff ever become a member of the new organization? To determine this question let us consider the nature of unincorporated voluntary organizations such as the St. Louis Stock Exchange. The St. Louis Stock Exchange is a voluntary association of individuals united, without any charter from the State, in an organization for the purpose of affording to its

members facilities for the transaction of business as brokers in stocks and securities and a convenient exchange for the conduct of such transactions. The association operates under a constitution, rules and by-laws, which measures the duties, rights and privileges of each member as such. It is obvious that these constitutions can have no binding force or effect except what they derive from the assent of the individual members. The constitution, rules and by-laws constitute the contract of membership, and no person can invoke the benefits of a contract or incur any liability thereunder unless he assents to such contract; and it has been repeatedly held that before such constitution and by-laws can have any binding force whatever upon a member of an unincorporated association which will be recognized and enforced by the courts, it must appear that such member personally assented to their provisions. The evidence in this case not only shows that Mr. Konta did not assent to the constitution, rules and by-laws of the St. Louis Stock Exchange, but that he did not, either by word or action, assent to its organization, and I am satisfied from the evidence, not only that he did not become a member of the new organization, but, also, that he never intended to join the St. Louis Stock Exchange. If he did not become a member of the St. Louis Stock Exchange, his right to prosecute this action fails.

"I might rest the decision of this case upon this proposition, but it may be said that the St. Louis Stock Exchange is estopped to deny the membership of the plaintiff by reason of its action in January, 1900, in suspending him for non-payment of dues, and by reason of its action of July 11, 1900, in dropping his name from the rolls for an alleged failure to comply with its rules respecting the non-payment of dues. An estoppel arises where one, by his words or conduct, willfully or knowingly causes another to believe in a certain state of things, and induces him to act on that belief so as to

injuriously alter his previous position. No man can set up another's act or conduct as an estoppel unless he has been misled or deceived thereby. Was the plaintiff deceived by the action of record of the St. Louis Stock Exchange in suspending him in January for non-payment of dues, and in July thereafter expelling him for such non-payment? He testified that he knew nothing about this action of the St. Louis Stock Exchange until shortly prior to the commencement of this suit. If he knew nothing about it, how can he be said to have been misled or deceived thereby? If he was in ignorance of this action on the part of the St. Louis Stock Exchange, how can he be said to have injuriously altered his previous position? It will be seen, therefore, that the case presented is destitute of an essential element necessary to constitute an estoppel. The action of the St. Louis Stock Exchange in this regard not having been acted upon by the plaintiff to his injury, did not estop the defendant from denying that the plaintiff ever became a member of the association.

"But even assuming, as contended by plaintiff, that Mr. Konta was a member of the St. Louis Stock Exchange, and that his expulsion was undoubtedly illegal, as it certainly was if he was ever a member of the exchange, he was bound, within a reasonable time after obtaining knowledge of such expulsion, to assert his rights; otherwise, he will be deemed to have consented to such expulsion, however illegal or irregular it may have been.

"In the case of Glardon v. Supreme Lodge Knights of Pythias, 50 Mo. App. 45, it is held that where a member was illegally expelled, it was incumbent upon him to affirm or disaffirm the act of expulsion within a reasonable time and in some distinct manner under the circumstances; and where he takes no steps of any kind to secure his reinstatement, allows dues to remain unpaid which had accrued and were payable prior to the date of expulsion, and neither tenders such dues nor

any which accrued subsequently, he must be taken to have acquiesced in and consented to the sentence of expulsion.

"In this case plaintiff ascertained through his agent, Mr. Ten Broek, in April or May, 1901, that he had been expelled from the St. Louis Stock Exchange for non-payment of dues. He had allowed dues to accrue which were payable on January 1, 1900, July 1, 1900, and January 1, 1901. He has at no time tendered these dues, nor any dues which accrued subsequently and prior to the institution of this suit, to-wit, dues payable July 1, 1901, and January, 1902. Nor did he take any steps whatever to set aside his alleged illegal expulsion until June 9, 1902.

"At the time he was suspended and at the time he was expelled memberships in the St. Louis Stock Exchange were worthless. He waited over a year and until a membership in the exchange was worth $7,500 before taking any steps whatever to assert his rights. Such delay as this, pending which there has been such a change in the value of memberships, must be deemed unreasonable, and a suit thus brought after such lapse of time does not appeal to the conscience of the chancellor.

"For further authorities upon this proposition see 1 Am. and Eng. Ency. Law, 570, and Niblack on Benefit Societies, par. 58.

"But there is another proposition which is fatal to the plaintiff in this case, and which seems to have been overlooked by counsel for both parties.

"It is a familiar maxim that he who seeks equity must do equity. The petition in this case alleges that he applied to the officers of the St. Louis Stock Exchange to ascertain what duties were assessed and levied against him, and that he offered to pay such officers all dues which were payable, if the defendant or its officers and agents would indicate what amount there was due and payable, but that the defendant, the St.

Louis Stock Exchange, refused to state what, if any, dues had been assessed or levied against the plaintiff, or what dues were payable. To successfully maintain this suit it was incumbent upon the plaintiff to show either that he had paid or tendered all dues payable to the St. Louis Stock Exchange, or that he had made application to pay the amount of such dues and the defendant refused to accept the same, or refused to state what dues, if any, were payable. There is no evidence whatever either that the plaintiff paid or offered to pay any dues, and there is no evidence whatever that he applied to any of the officers of defendant to ascertain the amount which was due and payable, and that such officer or officers declined to state what dues were payable by plaintiff.

"Fortunate, indeed, would be the plaintiff, if without having contributed, or offered to contribute, a dollar as dues, he should, as a regard for his ingenuity in discovering that he was a member of an organization which he did not join or intend to join, be rewarded by a decree of this court investing him with all the rights and privileges of such a membership! A decree reinstating him under such state of proof would be grossly inequitable. The motion to dissolve the injunction heretofore issued is sustained."

For the reasons stated in the foregoing opinion the judgment of the circuit court will be affirmed.

All concur, except *Marshall, J.,* not sitting.