VERA NEWMAN, Appellant, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, a Corporation, Respondent.

In the Springfield Court of Appeals, January 7, 1924.

1. **INSURANCE:** Insured's Retention of Paid-up Policy and Failure to Make Further Payments of Premium Held not to Preclude Suit on Original Policy. Where there is a mutual mistake as to the amount of premiums paid, and the insurer declares the policy forfeited, and issues a paid-up policy for an amount less than the original policy, when insured is not in default, the insured's retention of the paid-up policy and failure to make further payments of premium does not preclude beneficiary from suing on original policy following insured's death, since insurer's forfeiture of original policy relieves insured of making further payments of premium.

2. ———: Default of Insured under the Policy Held a Question of Fact. In action on life insurance policy, question whether insured was in default at the time insurer declared a forfeiture of the policy, and issued a paid-up policy for an amount less than the amount of the original policy, *held* question of fact for the trier of fact.

Appeal from the Circuit Court of Dunklin County.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND REMANDED.

*Shepard & Hawkins* for appellant.

(1) The giving of the said peremptory instruction was error because it deprived the plaintiff of her fundamental right to have the jury judge the weight of the evidence, the credibility of the witnesses and find the facts from the testimony and inferences therefrom. Buesching v. Gas Co., 73 Mo. 219, 231; Gannon v. Gas Co., 145 Mo. 502; State ex rel. v. Ellison, 268 Mo. 243-244. (2) The giving of the peremptory instruction was error because it was given on the theory that plaintiff was estopped to now urge that the policy was for $2000. There was no estoppel in this case, nor element of estoppel. No representation by plaintiff or insured had been made, inconsistent with the claim now asserted and sued on; no act of defendant was induced by any representation of insured or beneficiary; no injury has resulted to defendant from its own act, except that it is now asked to live up to its contract which it had hoped to avoid. Bank v. Ragsdale, 171 Mo. 168, 185; McLain v. Trust Co., 237 S. W. 506; Vette v. Hackman, 237 S. W. 802, 21 Corpus Juris, 1133, sec. (134) f; 21 Corpus Juris, 135, sec. (136) h, 1204, sec. (206) (2), 1207, sec. (208) (b). There was no sufficient plea of estoppel and the evidence did not show an estoppel. Defendant's first allegation of estoppel was that the insured defaulted. This was denied by the reply and the denial was sustained by abundant evidence. Thus defendant's first step was based upon fallacy, wrong and exercise of arbitrary power. Defendant also pleaded that it converted the policy and sent it to insured. Insured did not request this to be done and could not avoid it. This was defendant's willful act. Defendant also pleaded that in-

sured kept and retained the policy. Defendant wrote him to keep the policy, as it would be required in event of a claim. Defendant did not say what kind of a claim. There was no showing what kind of a claim insured had in mind while he kept the policy, as he was directed to do. He may have had in mind the very claim now being made. An act to be evidence of estoppel must be certain to every intent. If the act is susceptible of different constructions, there is no certainty to every intent and therefore no estoppel. Sutton v. Dameron, 100 Mo. 141, 21 Corpus Juris, page 1139, sec. (139) k. Defendant also pleaded that insured treated the policy as paid-up insurance. There was no positive evidence as to how insured treated the policy. There was therefore no certainty to every intent, hence no estoppel. Insured's treatment of the policy can be derived only by inference, and he being dead and his acts unexplained, such inference was for the jury and not the court. Insured did not draw the dividend. Burges v. Pan. Am., 230 S. W. 316; State ex rel. v. Ellison, 268 Mo. 243-244. Defendant also pleaded that insured did not pay or offer to pay any further premium. The failure to pay further premium under the circumstances of this case would not be any estopped or defeat recovery. Defendant had in hand the money for this payment and returned to, refusing to accept it; it also mutilated the policy, sent it to the insured, informed him that it was cancelled and never thereafter notified insured that it had recanted or changed its mind or resolution or would accept the premium if offered, or ever notified him further that premiums were due. Insured had exhausted all his efforts before that to get defendant to accept the premium and reinstate the policy, and it would not do so. Offer was useless. Johnson v. Ins. Co., 166 Mo. App. 261; Wayland v. Indem. Co., 166 Mo. App. 221, 232; Lee v. Mo. State Life, 238 S. W. 588, 861; N. Y. Life v. Lahr, 134 N. E. 657; N. Y. v. Norris, 91 So. 595; Life Ins. Co. v. Duff, 211 S. W. 738. Estoppel cannot be used to make rights,

but only to protect rights already made.  Unless defend-
ant had a right to cancel and convert the policy thereby
minimizing its liability it had no rights to protect, and
was a wrongdoer cannot call estoppel to protect him in
his wrongful act.   21 Corpus Juris, 1138, sec. (137) i;
McLain v. Trust Co., 237 S. W. 506.  No right inured to
defendant or grew out of its act of mutilating the policy
and sending it to the insured.   Defendant's own state-
ment stamped by it on the back of the policy was an
ex parte statement in which the insured did not partici-
pate, and which was not binding on insured, and it did
not have the effect to supersede the original policy con-
tract.  N. Y. Life v. Kimball, 106 Vermont App. 676.  If
defendant had the right to convert the policy, that ends
the matter.  If it did not have such right, the fact that it
did, without a right, convert the policy, would not cre-
ate any new right.   And if without a right defendant
wrongfully converted the policy it cannot call on estop-
pel to help hold an advantage wrongfully obtained.   Es-
toppel never aids a wrongdoer, or strengthens a wrong-
ful act.  21 Corpus Juris, 1138, sec. (137) i.  (3)  The
giving of the said peremptory instruction cannot be jus-
tified on the theory that it compelled the parties to abide
by any contract made by them.  (a)  The original policy
was the only contract ever made by the parties, and this
peremptory instruction allowed the defendant to avoid
rather than abide by that contract.  Defendant's ex parte
statement was not a new contract, and could not be made
such without a meeting of the minds.  N. Y. Life v. Kim-
ball, 106 Vermont App. 676.  (b)  The original policy
provided that if default occurred, the policy would be
reinstated at any time within five years, by payment of
premiums in arrears and showing of insurability to the
satisfaction of the company.  This was a contract to
reinstate upon the above conditions and that in passing
upon the insurability the company would be reasonable,
fair and just, and not unreasonable, unfair, capricious
or arbitrary.  N. Y. Life v. Adams, 235 S. W. 412; Mo.
State Life v. Hern, 226 S. W. 789; Thompson v. Postal

Co., 266 N. Y. 363; Mutual Life v. Lovejoy, 203 Ala. 452; Hinchliffe v. Minn. Mutual, 171 N. W. 776. The check and dividend (both in hand within five years) were sufficient to have paid the premium in arrears, if any, and the insured's insurability will be presumed, nothing appearing to the contrary. A health condition once shown to exist is presumed to continue. Canty v. Helpin, 242 S. W. 97, 102. Furthermore, insured furnished a health certificate showing a prima-facie condition of insurability, and likewise a medical examination at his own expense, upon defendant's suggestion and by the doctors named by defendant. Defendant refused to allow the presumption and disapproved the health certificate and the medical examination also, without then or now alleging or assigning any reason for so doing, and will therefore be presumed to have acted unfairly, unjustly, capriciously and arbitrarily and not fairly, reasonably, and justly, as by the contract it was required to do. (4) The giving of this peremptory instruction cannot be justified on the theory of waiver or abandonment. Neither waiver nor abandonment was pleaded, and to be relied on must be pleaded. And, furthermore, a presumption of law obtained in favor of insured to the effect that he did not intend to abandon his policy or waive his rights. Wayland v. Indemnity Co., 166 Mo. App. 332. (5) The giving of this peremptory instruction was error: First, because the giving of it allowed the defendant to escape the performance of a duty enjoined upon it by law, that is, to apply the surplus money in its hands to insured's credit arising out of the excess payments made during the first policy year, to the payment of the premium claimed by defendant to the end that insured's policy be kept in force and a forfeiture prevented. Sharp v. Arcanum, 251 S. W. 159; Olsen v. Arcanum, 224 S. W. 129, 132. Also defendant was allowed to escape the legal duty resting upon it to be reasonable, fair and just in passing upon the insurability of the insured. Authorities supra, 3. (6) The giving of this peremptory instruction was erroneous because it

Newman v. John Hancock Mut. L. Ins. Co.

allowed the defendant to escape and avoid the effect of its custom-made contract of receiving premiums after the period of grace. During the period of two years next prior to September 5, 1915, defendant had received without complaint seven out of the eight premiums on this policy after the days of grace had expired, from one to thirty-three days; and for the three years next prior it had received nine out of the twelve payments made after the days of grace. This was sufficient to establish waiver of the literal terms of the contract as to the time when the premiums should be paid and to make a contract by custom to allow the premiums to be paid after the days of grace, which contract would bind the defendant and prevent its refusing premiums tendered after the days of grace, until defendant notified insured that henceforth the terms of the policy contract would be insisted upon. James v. Reserve Fund, 148 Mo. 13; McMahon v. Maccabees, 151 Mo. 522; Andrews v. Ins. Co., 168 Mo. 151; Wright v. Ins. Co., 221 S. W. 383, (Mo. Sup.); John v. Union, 154 Mo. App. 70; Kelley v. Council, 241 S. W. 74 (Mo. App.); Brown v. Fidelity Co., 247 S. W. 47 (Ark.); W. O. W. v. Pearson, 244 S. W. 344 (Ark.); Ins. Co. v. McDowell, 42 Okla. 300. (7) The giving of said peremptory instruction was erroneous because it allowed defendant to recall and repudiate its own acts of waiver. (a) After the period of grace for the payment of this particular premium had expired, defendant wrote insured demanding that he sent in this premium at once, and the premium was sent in the next day after that letter was received. This letter and demand therein was a specific waiver of the lateness of this premium and compelled defendant to accept said premium. Ray v. Ins. Co., 211 S. W. 756; Roberts v. Ins. Co., 220 S. W. 996; Underwood v. Ins. Co., 194 S. W. 585—point 4. (b) Defendant held the check for premium from October 21, 1915, to January 1, 1916 (seventy days), and then returned it to the maker (M. Stubblefield) uncashed. Check was the usual method of payment. No objection was made

to the check. It was good if presented. Defendant had written for the premium. Defendant had been in the habit of receiving premium much later than this after grace. Defendant had written across the face of its records, "Do not reinstate this policy" and knew while it was holding this check and demanding health certificate and medical examination from insured, that it was not going to reinstate this policy. The retention of this check for this length of time under such circumstances was a waiver, defendant's statements to the contrary notwithstanding; and bound defendant to apply that check to the payment of that premium and forbade defendant converting the policy. Summers v. Ins. Co., 45 Mo. App. 55.

*Leahy, Saunders & Walther* and *Ward & Reeves* for respondent.

(1)  Under the admitted facts of this case the peremptory instruction to find for plaintiff in the amount tendered was properly given. Cooper v. New York Life Ins. Co., 211 S. W. 548 (Supreme Court of Missouri, March 28, 1919, Div. No. 2). (2)· The policy contract required the assured to pay his premiums in accordance with the terms of the policy as a condition precedent to any right of recovery, and it is admitted that for a period of about three years the assured neither paid, tendered, offered to pay or offered to tender any premiums. Wayland v. Western Life Indemnity Co., 166 Mo. App. 221, 235, 236 (K. C. Court of Appeals, June 17, 1912), where the court say: "The holder of an insurance policy, knowing that premiums and assessments will become due periodically, has no right to sit down in silence, fail to pay subsequent premiums and nurse the point that by some slight oversight or mere technical error the assurer has given him the right to hold his insurance without paying for it. Such are the cases of Insurance Co. v. Hill, 193 U. S. 551; Insurance Co. v. Phinney, 178 U. S. 328; Insurance Co. v. Sears, 178 U.

S. 345; Smith v. Insurance Co., 63 Fed. 769; McDonald v. Grand Lodge, — Ky. Law. 883, 53 S. W. 282; Lane v. Insurance Co., 33 Wash. 577." (3) The policy provided that, after its lapse for nonpayment of premiums, it could not be reinstated except: "(1) Upon production of evidence of insurability satisfactory to the company and approved at its home office, (2) and upon payment or reinstatement of any indebtedness to the company hereon or secured hereby, (3) and payment of arrears of premium with interest at the rate of five per centum per annum." (Numbers ours.) This provision of the policy is so clearly legal that it has never even been attacked. (4) Waiver and acquiescence are necessarily inferred from conduct and where the assured had accepted a policy in the reduced amount, canceled in accordance with the terms of his loan agreement, and had neither paid, tendered, offered to pay nor offered to tender subsequent premiums, it is proof conclusive that he had acquiesced in the construction placed upon the policy by the company, the terms of which are too clear for controversy. Cooper v. New York Life Ins. Co., supra. (5) Waiver, acquiescence and estoppel were specifically pleaded in the answer and attacked in the reply, so these issues are in the case; but, aside from any question of waiver, acquiescence or estoppel, the defendant insurance company merely invoked its legal rights under the policy-loan agreement which are held, in the Cooper case, supra, and in the case of New York Life Ins. Co. v. Dodge, 246 U. S. 357, 62 L. Ed. 772, to be contractual rights of which the company and the assured cannot be deprived, because the right to borrow money on an insurance policy is a constitutional right protected by the due-process-of-law clause of the Federal Constitution, and by the right of freedom of contract. The Dodge case was in error to the Springfield Court of Appeals, and reversed the judgment of that court. The policy-loan agreement in the instant case is protected by the Fourteenth Amendment to the Federal Constitution guaranteeing freedom of contract

and prohibiting any State from depriving a person of property without due process of law. These exact constitutional questions have been decided in the Dodge case, which doctrine is followed in the Cooper case, supra. If the policy in suit should be held to be a Missouri contract, it is protected by section 30, Article II of the Missouri Constitution, providing that the State shall not deprive any person of property without due process of law. This case is controlled under the Dodge decision supra, by Federal constitutional law, and this point is now raised at the earliest possible moment. The case of Dodge v. New York Life Ins. Co. is reported in 189 S. W. 609. (6) Appellant does not claim that either the policy contract or the policy-loan agreement is void, but merely attempts to brush both aside on theories of law which are sustained by no authorities.

FARRINGTON, J.—The plaintiff, now Vera Newman, was formerly the wife of Joplin W. Moad, she having married Newman subsequent to the death of Moad. The petition in this case is based on a policy of life insurance issued by the defendant for $2000, and plaintiff asserts in the petition that the policy was in full force at the death of her former husband, and that the defendant has refused to pay. The answer of the defendant admits the issuance of the policy as of September 5, 1911, for $2000, and pleads that in August, 1914, the assured borrowed the sum of $80. Further answering the defendant alleges that the policy was to be paid only in the event that the premium of $58.14 be paid each year for twenty years, or until the death of the assured, and that the last premium paid on the policy was for the period to September 5, 1915, after which time no premiums were paid on the policy or contract and that thereafter the assured was in default.

The policy contained the ordinary loan provision and provided that any time within five years from default of payment of such premium the policy may be rein-

stated upon production of evidence of insurability satisfactory to the company and approved at its Home Office, and upon payment, or reinstatement of any indebtedness to the Company hereon or secured hereby, and payment of arrears of premium with interest at the rate of five per centum per annum. The policy also provided that after three full annual premiums have been paid thereon, then in case of default in the payment of any subsequent premium or instalment, continued after the days of grace, then without action on the part of the holder, the policy will be continued for its value in participating paid-up life insurance which will have a yearly increasing surrender value.

We think this is a sufficient statement of the terms of the policy to decide the point presented here on appeal.

The policy was introduced in evidence by the plaintiff, which in its opening paragraph provided:

"In consideration of the representations in the application herefor, which is copied herein and hereby made a part hereof, and of the premium of fifty-eight and 14/100 dollars to be paid on delivery of this policy," and etc. The application is made a part of the policy, and in the statements made to the agent there was the following: "I wish to pay the premium annually in the amount of $58.14."

Dr. J. H. Simmons was placed on the stand by the plaintiff and testified that he was the agent who wrote this insurance and delivered the policy, and he testified that the insured paid him the annual premium on the policy in full when it was delivered.

A number of receipts for quarterly payments were introduced by the plaintiff, the first dated July 5, 1912, reciting that it was equivalent of one-fourth of the annual premium due June 5, 1912; then follows receipts for quarterly payments due September 5, 1912, December 5, 1912, and other receipts showing quarterly payments made on this policy up to 1915. These receipts

were evidently introduced by plaintiff to show that the company received these payments after they had become due, and after the days of grace in a number of instances, for the purpose of showing that the company had waived the provision as to the due date of the receipt. A letter was then introduced by the plaintiff from the General Agent of the Company at St. Louis, dated October 30, 1915, in which is acknowledged a health certificate signed by the insured together with a check for the amount due on the quarterly payment, less dividend, and stated to the insured that the Company declined to reinstate the policy without a medical certificate on the enclosed form which was furnished, and in that letter mentioned four doctors to whom the insured could go to receive this medical certificate. The insured, so far as the record shows, took no action to secure this medical certificate. On December 30, 1915, a letter was written by the General Agent in which the insured was told that the check for the quarterly payment which had been held by the company awaiting his medical certificate was returned because the Company had failed to receive satisfactory evidence of insurability, and advised him that the policy lapsed for non-payment of amount due September 5, 1915. On January 6, 1916, the plaintiff received a letter from the General Agent stating that his policy had been cancelled for non-payment of premium and interest on loan, and there was a cash surrender value coming to him which the Company would pay if he would furnish receipt signed by himself and wife, acknowledged before a Notary Public. Evidently no attention was paid to this letter by the insured. Then on March 6, 1916, the General Agent wrote to Dr. Hawkins, attorney for the deceased, stating that on repayment of the $80 loan and $2.34 interest there would be a paid-up insurance policy issued, payable at the death of the insured, for $366. No action was taken on this letter. Then on March 30, 1916, the General Agent wrote the insured calling attention to the letter of

January 6, 1916, enclosing him an endorsement on the policy showing that it was paid-up insurance for $124 together with the loan certificate and advising him to take care of this policy, that it would be required in case he decided to surrender for cash or in the event of a claim. A line was drawn through the figures $2000, the original amount of the policy, and the endorsement placed thereon showed that it was a policy in force for $124. Nothing further was done and the insured died in August, 1918. No further instalments of premium were paid or offered to be paid, and the insured retained the policy with the endorsement on it without any apparent objection or approval.

The trial court sustained a demurrer to the evidence, and after taking the proper steps the plaintiff has brought the appeal here from the judgment entered in favor of the defendant. Respondent undertakes to uphold the judgment of the trial court and relies principally on the case of Cooper v. N. Y. Life Ins. Co., 211 S. W. 548, which holds, under facts somewhat similar to this case, that where the insured, with a policy and loan provision such as we have, had defaulted in the payment of a premium and acquiesced in the action of the company in issuing him a paid-up policy of insurance which had been originally issued for $2000 was bound by the course that the Company took under the provisions of the policy, and this although there was a statute in Missouri forbidding the forfeiture of a policy where a certain number of payments had been made.

We would regard this case as being absolutely binding on us here and would sustain the trial court's action in sustaining the demurrer to the evidence were it admitted, as it was apparently done in that case, that there had been a default in the payment of premium at the time the Company took the action it did in demanding a certificate of insurability, and failing to get that issued a policy for $124. In the case at bar, however, there is some evidence which would sustain a finding

that the insured was not in arrears in the payment of instalments at the time the Company declared his policy forfeited and placed the endorsement thereon and sent it to the insured. That evidence consists, first, of the statement in the initial clause of the policy heretofore set out. It is further evidenced by the fact that in the application the assured elected to pay the premium in annual payments, and the agent who delivered him the policy positively asserts that on the delivery of the policy the insured paid him the first annual premium, which would be $58.14. If that amount was paid, and in the face of this evidence we cannot say that it was not, then the insured was not in arrears at the time the Company was claiming that he was and at the time they took the action to forfeit the policy on the claim that he was in arrears. The Cooper case (211 S. W. 548) merely holds that while a Company cannot under the statute forfeit a policy for non-payment of instalments after a certain number have been paid, yet the assured and the insurer may contract that such statute shall not take effect; and there being nothing unlawful in such contract, when the parties acted on the contract and the assured acquiesced in that action for three years, he nor his beneficiary will be permitted to recover because of the statute. In our policy, as there was in that, there is no provision in the loan agreement or in the policy that permits the company to forfeit the policy where the premiums have been paid up, and if it were admitted that the premiums were paid up no court in the land would hold that the company had rightfully forfeited for non-payment of premiums, and no amount of acquiescence on the part of the assured would render such action valid. We believe that had the assured and the insurer been mutually mistaken as to the amount that had been paid by the assured and had entered into a contract reducing this policy from $2000 to $124, on a showing by the assured of such mutual mistake and of such payment he could set aside the contract made

because of failure of consideration and because of mutual mistake, and certainly no acquiescence or waiver on the part of the assured could make any stronger contract than a new one entered into under mistaken facts. Neither would the assured be estopped if the money had been paid to the Insurance Company because it could not have been injured, having received the money.

It has been decided in this State in two cases, one that of Wayland v. Western Life Indemnity Co., 166 Mo. App. 221, 148 S. W. 626, and Johnson v. Hartford Life Ins. Co., 166 Mo. App. 261, 148 S. W. 631, that where an insurer wrongfully attempts to forfeit a policy, the failure of the assured to continue to pay premiums or to offer to pay them will not bar recovery. We, therefore, think that the law which is to govern this case, as we construe the cases heretofore cited, is that if in fact the assured was in arrears when the defendant was demanding the medical certificate and satisfactory evidence of insurability, then under the Cooper case the plaintiff cannot recover. On the other hand, if the assured had paid a sufficient amount of money by his first payment and his subsequent quarterly instalments so as to make him not in arrears on September 5, 1915, the date the assurrer was claiming his payment was due, then the company, in taking the action it did, wrongfully breached the contract of life insurance. Its demand for satisfactory evidence of insurability was such that it showed the assured that unless that was furnished the defendant intended to forfeit the policy for $2000. He, under the decisions quoted, was thereby relieved of making any further payments and his beneficiary may recover if in fact he was not in arrears in payment of instalments or premiums when the policy was forfeited by the defendant. We admit that the evidence tends strongly to show that the assured had never paid the original $58.14 on the issuance of the policy because he began to pay quarterly payments before the first year was up and continued to pay quarterly pay-

216 M. A.—13

ments thereafter, and tendered the last quarterly payment for the time the defendant was claiming that he was in arrears. This court cannot say, in the face of the testimony of the agent who delivered the policy, that the first year's premium of $58.14 was not paid on the delivery of the policy. That is a question of fact to be determined by the trier of fact. We are of the opinion, therefore, that the trial court erred in sustaining a demurrer to the evidence, and for the reasons herein stated the judgment is reversed and the cause remanded. *Cox, P. J.,* and *Bradley, J.,* concur.