MARY BELL WILLIAMS, APPELLANT, V. LIBERTY NATIONAL LIFE INSURANCE COMPANY, A CORPORATION, RESPONDENT.—S. W. (2d) —.

Springfield Court of Appeals. December 28, 1936.

Rehearing denied February 4, 1937.

*John A. McAnally* and *Bradley & Noble* for appellant.

*John W. Giesecke* and *Langdon R. Jones* for respondent.

SMITH, J.—This suit is based on the following petition, caption and signature omitted:

"Plaintiff states that the defendant is a corporation engaged in the business of writing life insurance and is organized under the laws of the State of Missouri and as such is capable of suing and is liable to be sued in the Courts of this State.

"For cause of action plaintiff states that the defendant by its policy of insurance Number 4732 issued on October 31, 1929, insured the life of Joseph D. Williams and promised for and in consideration of the premium therein stipulated upon the death of said Joseph D. Williams to pay to this plaintiff, wife of the insured, the sum of $2000.00, provided that such death occurred while said policy was in full force and while the premiums thereon had been paid thereon.

"Plaintiff further states that while said policy was in full force and effect and while all premiums due thereon had been fully paid the said Joseph D. Williams on November 4, 1933, died, and that thereby defendant became indebted and liable to pay to this plaintiff

the said sum of $2000.00 under the terms and conditions of said policy; that said policy is filed herewith and marked Exhibit A.

"Plaintiff further states that immediately after the death of Joseph D. Williams she requested defendant to furnish to her blanks or forms upon which to make formal proof of death as is provided by the terms of said policy, and that the defendant refused to furnish the same and has thereby waived such formal proof of death.

"Plaintiff further states that she has demanded of the defendant the payment of the said sum of $2000.00, and that the defendant has vexatiously, willfully and without reasonable cause refused to pay the same or any part thereof; that by reason thereof defendant has become liable to plaintiff as a penalty in an additional sum equal to ten per cent of the amount due and also for a reasonable attorney's fee for the prosecution of this case, and that a reasonable attorney's fee in this case is $500.00.

"WHEREFORE, premises considered plaintiff prays judgment against the defendant for the said sum of $2000.00 with ten per cent thereof additional as penalty and for $500.00 as attorney's fee for the prosecution of this suit and for her costs herein expended."

The amended answer, caption and signature omitted is as follows:

"Now comes Liberty National Life Insurance Company, defendant in the above entitled cause, and by leave of court first had and obtained files this its amended answer to plaintiff's petition herein and admits that it is an insurance corporation organized and existing under the laws of the State of Missouri and is engaged in the business of writing life insurance.

"Further answering defendant admits that it issued a policy of insurance on the life of Joseph D. Williams, dated October 31, 1929, by which it promised to pay to the plaintiff upon proof of the death of said Joseph D. Williams, the sum of two thousand dollars, provided such death occurred while the said policy was in full force and while no premiums therefor were in default.

"Further answering herein defendant admits that Joseph D. Williams died on, to-wit, November 4, 1933, but denies that said policy was in force and effect at the time of his death, denies that all premiums due on said policy had been paid up to the time of the death of said insured, and denies that the defendant became indebted or liable to pay to the plaintiff the sum of two thousand dollars or any other sum by reason of the death of said Joseph D. Williams, and denies each and every other allegation in said petition contained.

"Further answering herein defendant avers that the said policy of insurance provided that in the event said Joseph D. Williams failed to pay any premium on or before the date such premium became due, or in the event that he failed to pay any promissory note that might be made by said Joseph D. Williams and delivered to the defendant for the deferred payment of any unpaid premium, such failure in

either event rendered, without action on the part of the defendant, the said policy null and void and forfeited to the defendant all rights of the said Joseph D. Williams thereunder.

"Further answering herein defendant alleges that the said Joseph D. Williams paid only the first annual premium on said policy and failed, neglected and refused to pay the second or any subsequent annual premium or any installment thereof.

"Further answering herein this defendant alleges that after said policy had lapsed and became null and void and on, to-wit, December 24, 1930, said Joseph D. Williams made and delivered to the defendant a promissory note whereby he promised, on or before six months after the date thereof, to pay to the order of the defendant the sum of fifty and 24-100 dollars; that in consideration of the making and delivery to defendant of said written obligation to pay said sum of fifty and 24-100 dollars the defendant reinstated the policy sued on herein and another policy that had also lapsed for non-payment of premium, on the life of one Belle Lamb, which policy the said Joseph D. Williams had purchased of defendant and in which last referred to policy said Williams was beneficiary; that a semi-annual premium of the policy involved in this action amounted to the sum of thirty-three and 36-100 dollars and the semi-annual premium of the said Belle Lamb policy was sixteen and 88-100 dollars.

"Defendant further states that the said Joseph D. Williams wholly failed, neglected or refused to pay to the defendant the sum of fifty and 24-100 dollars as stipulated and promised in said note and the same and every part thereof remains unpaid.

"Defendant further alleges that the only premium which the said Joseph D. Williams paid on the policy herein sued on was the first annual premium and that no subsequent premium or any installment thereof and no part of the note hereinabove referred to has been paid by said Williams or by any person on his behalf, by reason whereof the said policy by the terms thereof lapsed and became null and void.

"WHEREFORE, having fully answered defendant prays to be hence dismissed with its costs."

The reply is a general denial of the new matter pleaded in the answer. The case was tried to a jury which returned a verdict in favor of the plaintiff for $2000, and judgment was entered accordingly.

Motion for new trial was filed and sustained by the trial court, and the plaintiff has appealed to this court. The Abstract of the Record before us shows that the court sustained the motion for new trial "because of error in giving instruction No. 1P, and refusing instruction No. 1DA, and modifying No. 1D and No. 2D."

Instruction No. 1DA was one directing a verdict in favor of the defendant. We shall consider that first, and if we reach the conclusion that this demurrer should have been sustained, it will not

be necessary to pass on the other assignments presented by the plaintiff.

Should the instruction directing a verdict for the defendant have been given? This of course necessitates a consideration of the testimony in the most favorable light to the plaintiff. There is not much controversy over the facts. The answer admits many of the facts.

There is no controversy over the fact that the policy for $2000 was issued and dated October 31, 1929, and that the first year's premium was paid. The policy provided for thirty-one days of grace for the payment of the second premium, which gave the insured insurance for one year and thirty-one days under the payment of the original premium, and this was all the insurance he was entitled to until and unless another payment was made. No other payment was made then, so the policy lapsed thirty-one days after the end of the first year. There is no controversy about that. It is what happened after that time that causes the controversy. Joseph D. Williams had no insurance under this policy after it lapsed until it was reinstated. Within the month of December 1930, R. L. Garner, the agent who sold the insurance in the beginning to Williams undertook to have the policy reinstated, and induced Williams to execute his note payable to the defendant for enough to pay a semi-annual premium on the policy on his life. An agreement to this effect was reached and Williams executed and delivered to the defendant his promissory note dated December 23, or 24, 1930, payable six months after date. (The note was not produced at the trial, hence the uncertainty as to the exact date.) There is no controversy but that it was dated either the 23rd or 24th of December 1930, and was due six months thereafter, and that the note was accepted in the place of a cash payment of premium on the policy of insurance.

The defendant contends that this note was given and accepted to cover six months insurance from the end of the first year's insurance, or from October 31, 1930, and that this note continued the insurance for six months from October 31, 1930.

The plaintiff contends that the note was given and accepted for six months insurance but that it covered the time from the date of the note, December 23, or 24, 1930 to June 23, or 24, 1931.

The plaintiff contends that the note was not due until June 23, or 24, 1931, and that the note covered insurance until that date, and that the defendant lapsed the policy on June 1, 1931, in violation of its contract made with the insured when it accepted his note, and that because the defendant lapsed the policy before the end of the term covered by the note, it was done in violation of its contract with the assured. We quote from plaintiff's argument as to plaintiff's position, as follows:

"It is plaintiff's contention that the defendant lapsed the policy wrongfully, that is, before it had the lawful right to do so. And that

when the defendant lapsed the policy on June 1, 1931, it did so wrongfully and that having wrongfully lapsed the policy there was no obligation or duty on the insured to thereafter pay or tender the premiums in order to keep the policy in force.

"Plaintiff's theory is based on these propositions: (1) That defendant accepted the note in payment of six months' insurance from the date of the note which was December 23, or 24, 1930, and that so accepting the note, a new anniversary of the policy was created, and the anniversary was changed from October 31st or November 1st to December 23rd or 24th; (2) that the note being accepted in payment of six months' insurance was the same in law as payment in cash and, therefore, defendant had no right to lapse the policy during the grace period of 31 days, which would have been 31 full days after the due date of the note, to-wit, June 23, or 24, 1931; (3) that if the court does not agree with us that the note transaction created a new anniversary of the policy, then figuring the anniversary to be October 31st or November 1st, and that the note paid the premium for six months from its date, that is, to the end of the day of May 1, 1931, under such theory, a premium would be due on May 1st or 2nd, 1931, and the grace period would not begin to run until midnight of the day of May 1st or May 2nd, 1931. Including May 2nd, the 31 days of grace expired at midnight on June 2nd, and since the policy was lapsed or forfeited on June 1, 1931, there can be no escape that the policy was lapsed wrongfully under any theory. This result is reached by figuring the note dated December 23rd, but the evidence shows that the note was dated December 23rd or 24th, and the defendant pleaded in its answer that the note was dated December 24, 1930, and if so dated, then there can certainly be no question that under any theory, the policy was lapsed by the defendant before it could be lawfully lapsed."

We think it is not necessary to set out the evidence here in detail, for there is not much controversy over the evidence. There is no controversy over the fact that the first year's premium was paid and that the policy lapsed when the time covered by the first year's premium expired. There is no controversy over the fact that a note was taken December 23, or 24, 1930, to cover six months insurance, and that this note was not paid when it became due.

There is a controversy between the parties as to the particular six months covered by the note. The defendant contends that it was given to cover the six months immediately following the first year's insurance. The plaintiff contends that the note was given and accepted to cover a six months period beginning at the date of the note. As we view the case it is not necessary for us to decide which particular six months were covered by the reinstated insurance, because there was no payment of the note, and no effort on the part of the insured to pay the note, or any other premium. Considering the note in the

most favorable light to the plaintiff it was given December 24, 1930, and the due date six months later was June 24, 1931. Assuming, but not deciding here, that the acceptance of this note entitled the insured to thirty-one days insurance after the due date of the note, this would extend the insurance to July 26, 1931, at the most.

This note was not paid and the evidence does not show any effort on the part of the insured to pay it or any part thereof, on any premium thereafter. The evidence does show that the note was returned to the insured on September 8, 1931, with the following letter addressed to the insured:

"September 8, 1931

"Mr. J. D. Williams,

"R. F. D. No. 1,

"Kennett, Missouri.

"Dear Mr. Williams:

"We are enclosing herewith your note for $50.24 which was given to the Liberty National Life Insurance Co. as a renewal payment on Policy No. 4776 and Policy No. 4732.

"These policies were lapsed on June 24th for non-payment of the note. We are returning the note herewith to you.

"LIBERTY NATIONAL LIFE INSURANCE CO.,

"FPSJ:K                                    Treasurer."

The time of lapsing the policy, as shown by this letter was June 24, which was thirty-one days before it could have been lapsed, according to plaintiff's theory.

The plaintiff contends that even if the note were given to cover six months insurance from the end of the first year's insurance that the policy was lapsed by the company prior to the time it should have been lapsed. The assistant secretary of the defendant company testified at the trial of this case that she had charge of the bookkeeping and remittances to the company for premiums. They all went through her hands; that she had charge of the payments on promissory notes given to the company. She was asked by the plaintiff the direct question as to when this policy was lapsed by the company. Her answer was, "On June 1, 1931." The plaintiff claims that if the policy were lapsed by the company on June 1, 1931, it was lapsed at least one day too early and that such a lapsing by the company was illegal. This conclusion is reached by the plaintiff in this manner: The policy was issued and dated at Monett, Missouri on October 31, 1929; since Kennett is 264 miles from Monett it could not have been delivered to the insured prior to November 1, 1929, and was not effective until delivered. One year from November 1, 1929, would be November 1, 1930; and an additional six months covered by the second note would pay for six months insurance from November 1, 1930, up to May 1, 1931. By adding the thirty-one days of grace would make the time for lapsing the policy the end of the day on June 2, 1931. And since

it was lapsed on June 1, 1931, as testified to by the assistant secretary it was too early, and an illegal lapsing even under this theory of the case.

The assistant secretary said the company lapsed the policy June 1, 1931; the letter from the company, above quoted said the policy lapsed June 24, 1931. There is no evidence that the insured was advised of the lapsing of the policy until he received the letter dated September 8, 1931, nor is there any evidence of any kind that he or anyone for him attempted in any manner to continue the policy after he gave the note of December 23, or 24, 1930.

We have this situation: The company said through its assistant secretary, while she was on the stand, that the policy was lapsed June 1, 1931; the company said through its letter dated September 8, 1931, that the policy was "lapsed on June 24 for non-payment of the note," which was thirty-one days prior to the time it would have lapsed according to plaintiff's theory. There is no evidence of any kind before us that the insured had any notice that his policy was lapsed until September 8, 1931, which was seventy-six days after the last lapsing date as mentioned in the letter.. We are confronted with this situation, which is different from any cases that we have noticed, that is, the insured had insurance covered by a note which was due June 24, 1931, but which was not paid at maturity, and so far as the evidence shows nothing was ever done to extend the insurance or to pay the note, or to pay any premium to extend the insurance beyond the time covered by the note. Seventy-six days after June 24, the insured was notified that the company had lapsed his policy. And, according to plaintiff this lapsing was thirty-one days before it could have been lapsed under the new expiration date as fixed by taking the note, and according to the evidence it was an additional forty-five days before the insured had any notice from the company that the policy had been lapsed.

With that condition of affairs, we are confronted with this question; could the insured, seventy-six days after his note became due and forty-five days after his policy lapsed, according to his theory, upon learning for the first time that the company had lapsed his policy too soon, take advantage of the error on the part of the company in so lapsing the policy, still hold the company liable, and this too in the face of the facts that he lived two years, one month and twenty-seven days after he learned that his policy had been wrongfully lapsed?

Let us assume that the giving of the note for a six months premium created a new anniversary of the policy, for there are some cases which seem to so hold. [Fallis v. Mass. Bonding Company (Mo. App.), 243 S. W., l. c. 218; Roberts et al. v. American Nat. Assur. Co., 220 S. W. 996; Kelly v. Abraham Lincoln Life Ins. Co., 33 S. W. (2d) 992.] Under the most liberal construction the acceptance of the note

paid for six months insurance from the date of the note, and, if the thirty-one days of grace were added to the end of the six months period, then the policy lapsed at most on July 25, 1931, which was forty-five days before he was notified that his policy had lapsed.

If this plaintiff has any rights under this policy it is because of the wrong on the part of the company in lapsing it too soon, and by so lapsing it deprived the insured, or the beneficiary, of some rights thereunder. There is no evidence of any kind that the insured was advised of the lapsing until September 8, 1931, and this made forty-five days after it could have lapsed under the most favorable claims of the plaintiff. The most that can be said here is that on September 8, 1931, the company notified the insured that his policy had been lapsed for seventy-six days, when it had only been lapsed under the law for forty-five days. Under the most favorable contention of the plaintiff the policy had been lapsed forty-five days when he received his notice.

The fact of marking a policy lapsed on the books, would not of itself make it a lapsed policy, and the fact of writing the insured that his policy had lapsed on a certain day would not under the law lapse it on that date. It seems that the only effect the notice to the insured could have, was to deprive him of some right if any he had under the policy, or cause him to do something or refrain from doing something to protect his rights. But in this instance he had no rights under the policy at the date he was notified of its lapsing. His rights had expired at the end of the time covered by his note, which at the very most was thirty-one days after the due date of the note, and forty-five days before he was advised that his policy had lapsed.

The plaintiff has cited us quite a number of cases in an effort to convince us that the trial court should not have given the peremptory instruction to find for the defendant. Among these cases are the following Missouri cases: Fallis v. Ins. Co., 243 S. W., l. c. 218; Roberts v. Assurance Co., 220 S. W. 996; Spencer v. Sec. Ben. Assn., 297 S. W. 989; Newman v. John Hancock Mut. Ins. Co., 7 S. W. (2d) 1015; Klinkhardt v. Crescent Ins. Co., 47 S. W. (2d) 210; Bellis v. M. W. A., 49 S. W. (2d) 1059.

These cases are based upon different facts from this case. In all of those cases some effort was made by the insured either by tender or otherwise to keep the policy in force or to continue it according to the insured's theory of the case.

We do not read any of those cases to hold that the insured may wait until his policy has lapsed because of non-payment on his part, and then after the time has lapsed for payment, he or his beneficiary discovers that the company had said his policy had elapsed at a time prior to its true lapsing date under the law. Under the unquestioned testimony in this case the insured had permitted his policy to lapse. There is not a scintilla of testimony that he made any attempt to pay

any further premium thereon, or that he made any attempt to reinstate the policy although he knew this for more than two years prior to his death and there is no evidence that the lapsing of the policy in any way prevented his further action, nor is there any evidence that he ever considered that he was insured after the term bought and covered by his note.

We are forced to the conclusion that under the uncontroverted facts in this case the trial court committed error in not giving the instruction directing a verdict for the defendant. We are justified in this conclusion by the admitted facts, and the opinion of our Supreme Court in the cause of Scotten v. Metropolitan Life Ins. Co., 81 S. W. (2d) 313.

The judgment should be reversed, and the cause remanded, with directions to render judgment for the defendant. It is so ordered. *Allen, P. J.,* and *Bailey, J.,* concur.