**ROSENBLOOM et al. v. NEW YORK LIFE INS. CO.**

No. 13394.

Circuit Court of Appeals, Eighth Circuit.

Aug. 21, 1947.

Rehearing Denied Sept. 18, 1947.

Solbert M. Wasserstrom, of Kansas City, Mo. (Phillip L. Levi, of Kansas City, Mo., on the brief), for appellants.

Richard S. Righter, of Kansas City, Mo. (Howard A. Crawford, of Kansas City, Mo., Ferdinand H. Pease, of New York City, and Lathrop, Crane, Sawyer, Woodson & Righter, of Kansas City, Mo., on the brief), for appellee.

Before STONE, THOMAS, and JOHN-SEN, Circuit Judges.

STONE, Circuit Judge.

This is an action in two counts. In the first count, specific performance of an annuity contract issued by appellee to Jay R. Rosenbloom is sought to compel issuance of a policy of insurance on the ordinary life plan on the life of Rosenbloom, in accordance with an option in the annuity contract. The second count is to collect death benefits under the life policy, with damages for vexatious delay and for attorney fees.

Both parties filed motions for summary judgment (Rule 56, Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c) with supporting affidavits. Two depositions were added later. The trial court found that no essential fact was in dispute. Judgment was entered denying the motion of plaintiffs, sustaining the motion of defendant, and dismissing the action at the costs of plaintiffs. From that judgment, plaintiffs appeal.

The issues here have to do with the refusal of appellee to issue the ordinary life policy, on request, unless such policy included appellee's then current "War and aviation clause." Broadly, this clause restricted recovery for death from war or aviation causes to the return of the premiums with compound interest and certain dividends, less any indebtedness to the appellee. Such restricted amount would be much less than recovery under an ordinary life policy. More particularly, the issues are concerned with four matters: (1) was appellee within its rights in refusing conversion to an ordinary life policy unless the restrictive "war and aviation" provision was included therein; (2) if appellee had no such rights, were the conditions precedent to such coversion complied with by appellants or waived by appellee; (3) was appellants' offer to perform made to appellee's soliciting agent binding on appellee; and (4) did appellants abandon their rights to such conversion?

1. *Rights of appellee as to conversion.*

■ The rights of the parties as to conversion of the annuity into an ordinary life policy are to be determined by the contract for the annuity which is the sole source of such rights. This issue is purely one of construction of that contract.

The pertinent portions of the annuity contract are as follows:

"Privilege of Change to Other Plans.— At any time before default in payment of premium, provided the Annuitant is then at least 10 years of age but less than 55 years of age and prior to the commencement of Annuity payments hereunder, the Annuitant may exchange this Policy for a Policy on the Ordinary Life, Limited Payment Life or Endowment plan of Insurance, issued by the Company at the time this Policy takes effect, at a total premium as high as that charged under this Policy, but not more than twenty percent in excess thereof, upon presentation at the Home Office of evidence of insurability satisfactory to the Company. The exchange shall be effective upon surrender of this Policy and the payment to the Company of the difference in premiums with compound interest at the rate of six per cent per annum from the due date of each premium to the date of exchange; allowance will be made for any larger dividends on the new plan. The new Policy will take effect as of the effective date of this Policy and the premium will be at the rate which would have been charged if this Policy had been issued originally on the new plan."

"Residence, Travel and Occupation.— This Policy is free of conditions as to residence, travel, occupation, and military or naval service."

The petition alleges and the answer admits that policies issued by appellee on the ordinary life plan, *at the time this annuity took effect* (December 20, 1938), contained the provision following:

"Residence, Travel and Occupation.— This policy is free of conditions as to residence, travel, occupation, and military or naval service."

■ Since the annuity policy gave the annuitant the privilege of changing to "a Policy on the Ordinary Life * * * plan of insurance, issued by the Company at the time this [annuity] policy takes effect;" and since the Ordinary Life policy issued by the Company, at the time this annuity policy took effect, expressly stated that it was "free of conditions as to * * * military or naval service," it is clear that the right of this annuitant was to demand and the obligation of the Company was to deliver an Ordinary Life Policy free of such conditions. This is emphasized by the annuity policy provisions that the new policy is to take effect as of the effective date of the annuity policy and that premiums on the new policy shall be calculated from the effective date of the annuity policy.

■ As to this issue, the contention of the Company is that the provision in the

annuity policy that a conversion might be had "upon presentation at the Home Office of evidence of insurability satisfactory to the Company" gave it the right to insist upon inclusion in the new policy of a provision excluding coverage for military or naval hazards. The argument is that this is true because the test of "insurability" is at the time of conversion, that "insurability" comprehends not only health but vocational and other matters which enter into assumption of or limitation of the risk.

We think the test of "insurability" here is to be determined as of the time of conversion. For the purposes of this opinion, we assume that "insurability" may include elements other than health—such as vocation. See Kirby v. Prudential Ins. Co., Mo.App., 191 S.W.2d 379, 162 A.L.R. 660; Hanna v. Aetna Life Ins. Co., 217 Mo. App. 261, 263 S.W. 526, 529; Long v. St. Joseph Life Ins. Co., Mo.App., 225 S.W. 106, 107; Malone v. State Life Ins. Co., 202 Mo.App. 499, 213 S.W. 877. Also, we recognize that this is a Missouri contract and that, where a privilege of conversion is exercised, the new policy is a new contract. National City Bank v. Missouri State Life Ins. Co., 332 Mo. 182, 57 S.W.2d 1066, and compare, as to reinstated policies, State ex rel. Metropolitan Ins. Co. v. Shain, 334 Mo. 385, 66 S.W.2d 871, 874; Jenkins v. Covenant Mut. Life Ins. Co., 171 Mo. 375, 71 S.W. 688, 690.

It remains to fit these principles to the pertinent situation as created by the annuity contract. While a contract might have been drawn which would have given the Company a broad, open choice of determining (within reasonable bounds of the word "insurability") what it would require, yet the parties could limit that power as they might agree. We think there was such an agreed limitation here.

The annuity policy provided, very clearly, that the annuitant had the privilege of converting to an Ordinary Life Policy of the kind "issued by the Company at the time this Policy takes effect." Such Ordinary Life Policy expressly denied any inclusion of military or naval conditions. Thus, it denied the Company the right to require such inclusion. This denial can-not be escaped on the theory that "insurability," as used in the annuity policy, left the company the right to include such. Such theory is entirely inconsistent with the provisions of the contracts. One effect of such provisions was to eliminate "conditions as to * * * military or naval service" as a test or requirement for insurability.

## 2. Policy conditions precedent to conversion.

The Annuity Policy set forth certain conditions precedent to the exercise of the "privilege of change to other plans." The conditions precedent here involved were (1) "presentation at the Home Office of evidence of insurability satisfactory to the Company"; (2) "surrender of this [Annuity] Policy," and payment to the Company of "the difference in premiums." While not expressly required by the Annuity Policy, the nature of the transaction necessitated some sort of application by annuitant for the change desired. When this change was requested, a memorandum from the Actuarial Department of the Company set forth the Company requirements for this change as being (1) "return of the policy," (2) "Form 2274 [an application] signed by annuitant," (3) "Inspection Report," and (4) "Full medical Re-Examination."

The Company contends that none of the conditions precedent were performed. The trial court found it unnecessary to resolve this issue as it cast its determination upon the matter of "insurability," examined hereinbefore.

There is no material dispute in the evidence as to what was done by the parties in connection with this desired change of Policy. The evidence is clear that none of the conditions precedent was actually performed by or for annuitant. Such performance was necessary unless legally excused. Whether there was such legal excuse is the matter to be now determined.

There can be no serious dispute as to the applicable rule of law. That rule is that a party is not required to do a useless, futile act. More narrowly and pertinently stated, it is that where failure of a party to perform a condition is in-

duced by a manifestation to him by the other party that he will not substantially perform his own promise, performance of such condition is waived and, therefore, excused. Frank A. Gilbert Realty Co. v. Timmerman, Mo.Sup., 183 S.W.2d 131, 133; Tevis v. Tevis, 259 Mo. 19, 167 S.W. 1003. 1005; Deichmann v. Deichmann, 49 Mo. 107, 109; Swift v. Kansas City Life Ins. Co., Mo.App., 184 S.W.2d 184, 187; Marty v. Security Benefit Ass'n, Mo.App., 99 S.W. 2d 132, 136; Hawkins v. Washington Fidelity National Life Ins. Co., 230 Mo.App. 882, 78 S.W.2d 543, 546; Klinkhardt v. Crescent Ins. Co., Mo.App., 47 S.W.2d 210, 212; Katz v. Dreyfoos, Mo.App., 26 S.W.2d 999, 1001; Newman v. John Hancock Mutual Life Ins. Co., Mo.App., 7 S.W.2d 1015, 1017; Spencer v. Security Benefit Ass'n, Mo.App., 297 S.W. 989, 991; Newman v. John Hancock Mutual Life Ins. Co., 216 Mo.App. 180, 193, 257 S.W. 190, 192; Murphy v. Brotherhood of Railroad Trainmen, Mo.App., 199 S.W. 730, 732; Wayland v. Western Life Indemnity Co., Mo.App., 148 S.W. 626, 629; Mekos v. Fricke, Mo.App., 139 S.W. 1181, 1183.

The undisputed evidence pertinent to this issue is as follows. Annuitant would be eighteen years old June 19, 1944 and intended to enlist in some branch of the armed services soon thereafter. In the latter part of 1943, his father and he discussed arrangement of his affairs and, among other matters, it was decided to exchange this Annuity Policy for one on the ordinary life plan. Accordingly, the father promptly contacted the agent of the Company, Mr. Rogell, from whom the Annuity Policy had been secured. To this agent, the father communicated the desire for the exchange and that the father would be the beneficiary under the new policy. The agent stated he would transmit the request for change to the proper officers of the Company. The agent took the matter up with the "general correspondence clerk" of the branch office, whose duty was to handle all general correspondence with the Home Office. This clerk wrote the Home Office (Actuarial Department) that the agent had requested "figures" to change this policy to both Ordinary Life and 20 Payment Life plans and, also, whether the changed policies would contain a "War Clause of any kind."

In January 1944, the Actuarial Department sent the clerk several separate statements on the same form—the differences relating solely to figures as to amounts of insurance and of required premiums under the different plans. All of these statements contained the notation "With War and Aviation Clause." Each set forth the same four "Requirements" (as set out hereinbefore) for the exchange. These statements were handed the agent who took them to the father. The father examined the statements; selected one; and stated they would comply with all of the "Requirements" but that they would not accept a new policy unless the War and Aviation Clause was omitted. He asked the agent to take up with the Company the elimination of this clause. This the agent did through the same clerk of the local branch. The result was a "Memo" to the agent from the clerk, of March 1, 1944, stating;

"We return herewith the outlines of the different changes in connection with the above numbered Retirement Annuity contracts, as the Home Office has reiterated that any change in connection with these retirement annuity contracts to a form of permanent life insurance must contain the Company's present War and Aviation Clause.

"We regret that we have no better word for you."

The agent promptly showed this memo to the father. The father stated they were ready to comply with all of the "requirements" but would not accept a policy with this clause. Also, he asked the agent if it would do any good to comply with the requirements. The agent said it would not, that he had done all that he could; and advised the father to see a lawyer. The annuitant had not yet joined the armed forces and was at home available for physical examination and for other purposes in connection with the change of policy. In June, he joined the Merchant Marine and shortly afterwards left in foreign service.

■ From the foregoing outline of the fact situation, it is clear that annuitant was ready and willing to comply with the Company "requirements" for the change in policies; and that the Company was willing to make the change but would not issue the new policy unless it contained the "War and Aviation Clause." As determined hereinbefore, the Company had no right to insist upon inclusion of this clause but was obligated to issue a policy as demanded by the annuitant. This action of the Company was an unequivocal statement that it would not perform its contract of exchange in a vital particular. This position was intended to be and was communicated to annuitant. The Company has never departed from this position and is now insisting that it is right. We may accept the sincerity of the Company but that has no bearing upon the actual rights of the parties as to this matter. By communicating to the father its positive intention not to perform its contract, the company has waived its rights to insist upon performance of these conditions precedent by annuitant and he is thereby excused therefrom.

The Company argues this issue on the basis of option, of anticipatory breach and of equity. None of these arguments meets the situation here where the issue is whether a party to a contract is compelled to perform conditions precedent where the other party has communicated its definite intention not to perform.

### 3. *Offer to perform made only to agent.*

The Company presents the issue that any offer by annuitant to perform the conditions precedent to a change in policies was ineffective because made only to its soliciting agent, who was not authorized to represent it in such matters.

The position of the Company is fourfold: (1) that it is a general principle of law that the burden is on one, who offers performance of a contract to a corporation, to show authority by the one to whom the offer is made to represent the corporation in the matter; (2) that the authority of a mere soliciting agent of an insurance company does not extend to transactions of this character; (3) that the Annuity Contract expressly limited the representations of the Company in matters of this kind to the "Home Office" and to "the President, a Vice-President, a Secretary or the Treasurer of the Company;" (4) and that the agent here, Rogell, was the agent of annuitant in these transactions and not the agent of the Company.

We may accept the arguments that one dealing with a corporation must show authority in the one dealt with to represent the corporation (Gregmore Orchard Co. v. Gilmour, 159 Mo.App. 204, 140 S.W. 763; Norton Lumber Co. v. Driving Park Ass'n, 64 Mo.App. 377); and that the authority of an insurance soliciting agent does not, generally speaking, include authority to make changes in the contract of insurance (Mitchell v. Metropolitan Life Ins. Co., Mo.App., 116 S.W.2d 186; Bennett v. Royal Union Mutual Life Ins. Co., 232 Mo. App. 1027, 112 S.W.2d 134; Gibson v. Texas Prudential Ins. Co., 229 Mo.App. 867, 86 S.W.2d 400).

Such acceptance has slight bearing upon this issue, however, since the Annuity Contract itself expressly contains the limitations here pertinent. It provides that "only the President, a Vice-President, a Secretary or the Treasurer can make, modify or discharge contracts, or waive any of the Company's rights or requirements; that notice to or knowledge of the soliciting agent is not notice to or knowledge of the Company, and that the soliciting agent is not authorized to accept risks." Also, that "no agent is authorized to * * modify this contract * * * or to waive * * * any of the Company's rights or requirements." One of the expressed requirements to bring about a "Change to Other Plans" is "presentation at the Home Office of evidence of insurability satisfactory to the Company."

■ These provisions in the Annuity Contract convince that such contract withdrew any authority for a soliciting agent to represent the Company in working out a "change of plan" of insurance. Such provisions are lawful and binding. Aetna Life Ins. Co. v. Moore, 231 U.S. 543, 559, 34 S.Ct. 186, 58 L.Ed. 356; New York Life Ins. Co. v. McCreary, 8 Cir., 60 F.2d

355, 358. However, this does not determine this issue because the further question of waiver is here present. Since such provisions are obviously for the benefit of the Company, it may waive them to any extent it may desire. New York Life Ins. Co. v. Chapman, 8 Cir., 132 F.2d 688, 693. It may use its own soliciting agents for any purpose and extend their powers and authority as it may wish. What did the Company do here?

The agent involved here is Mr. Rogell. Reference is made to the outline of facts under the next preceding issue examined in this opinion and they need not be repeated here. It will be enough to refer to such as are instantly pertinent. These facts clearly mirror the transactions as follows. The father of annuitant, a minor, told Rogell of the intention to take advantage of the right to change the annuity policy to one of the old Life plan. Rogell requested Naughton (the branch office official whose duty it was to handle all general correspondence with the Home Office, including correspondence concerning change in policies) to "secure figures and requirements from the Home Office for the change" of this Annuity Policy to life insurance policies. Rogell requested, also, that Naughton inquire "whether such policies, if issued, would contain any kind of a war clause." Naughton communicated these requests to the Home Office. That Office furnished the desired information on "the form customarily used by the Company to answer inquiries of this character." Naughton delivered these "forms" to Rogell. All of the forms included the information that any new policy would contain a "War and Aviation Clause." Rogell showed these forms to the father of annuitant. From these forms, the father selected the policy he wished and expressed satisfaction with all the requirements to make the change and offered to comply therewith. He insisted he was entitled to a new policy without the "War Clause." Rogell told him that "the only thing I could do about it was to take it back up with the Company." This was done. Later Naughton received from the Home Office and transmitted to Rogell the information that the Company would insist on inclusion of a "war and aviation clause" in a new policy. Rogell showed this memo to the father. The father renewed his insistence on a policy without the "war clause;" demanded such as a right; and repeated the offer to comply with the requirements for a change. To this Rogell replied:

"This is the whole story; I cannot do anything more about it. If you want to do anything more about it it is up to you to get some legal aid."

The legal result of this fact situation is that the Company used Rogell as a means of immediate communication to the father of its requirements for and its position as to the change in plan of insurance desire by the insured. By so doing, the Company held out Rogell as its agent in transmitting and receiving information connected with this transaction. The father was entitled to rely upon this apparent situation and, therefore, to regard communications from him to Rogell connected with this matter as being made to the Company under the procedure adopted by it. Hence, an offer to perform and a statement of position by the father to Rogell were made to the Company. New York Life Ins. Co. v. Chapman, 8 Cir., 132 F.2d 688, 693; Lanowah Inv. Co. v. John Hancock Mut. Life Ins. Co., 236 Mo.App. 1062, 162 S.W.2d 307, 310; Green v. American Life & Accid. Ins. Co., Mo.App., 93 S.W.2d 1119, 1124.

The Company insists that Rogell was the agent of insured in this transaction. There is no basis in the fact situation for this claim; and see R.S.Mo. 1939, Sec. 5844, Mo.R.S.A.; Bank Savings Life Ins. Co. v. Butler, 8 Cir., 38 F.2d 972, 974, certiorari denied 282 U.S. 850, 51 S.Ct. 28.

4. *Abandonment and Acquiescence.*

The Company contends that the annuitant abandoned his position of insisting upon a change in policy plan and acquiesced in the position taken by the Company.

The applicable law is that of Missouri. The law as to *abandonment* of a right and as to *acquiescence* in denial of a right are closely akin. A line between them

is not easily drawn and the need for such demarcation is often unnecessary. Where a right has not been challenged, the situation calls more clearly for the issue of abandonment. In such situations, abandonment is a fact made up of "an intention to abandon, and the external act by which the intention is carried into effect." Pocoke v. Peterson, 256 Mo. 501, 165 S.W. 1017, 1021. The Pocoke case involved abandonment of a homestead. The same rule had been applied earlier in charitable trusts (Strother v. Barrow, 246 Mo. 241, 250, 151 S.W. 960, 963) and as to real estate (Hickman v. Link, 116 Mo. 123, 22 S.W. 472, 473).

■■■ However, this same doctrine has been applied to insurance cases where there was a denial by the insurer of the right claimed to have been later abandoned by the insured Wayland v. Western Life Indemnity Co., 166 Mo.App. 221, 148 S.W. 626. For this court, Judge Johnsen has recently stated the Missouri rule in Equitable Life Assur. Soc. of United States v. Mercantile-Commerce Bank & Trust Co., 155 F.2d 777, 779–780.

"The test of an abandonment of rights under a life insurance policy is the existence of an intent to abandon, and the presumption is that the owner of property intends to preserve his rights." Wayland v. Western Life Indemnity Co., 166 Mo. App. 221, 148 S.W. 626, 629.

"The question of abandonment is one largely of intention, and the burden of proof is upon the one who asserts it." Johnson v. Hartford Life Ins. Co., 271 Mo. 562, 197 S.W. 132, 136.

■■■ Acquiescence is founded on equitable estoppel. The test of acquiescence is "unreasonable delay * * * coupled with such a material change of conditions" as to make it inequitable not to presume acquiescence. Suhre v. Busch, 343 Mo. 170, 120 S.W.2d 47, 48, 56. "It is an essential element of equitable estoppel that the person asserting the estoppel shall have changed his position for the worse in reliance upon representation or conduct of the person sought to be estopped." Sutorius v. Mayor, 350 Mo. 1235, 170 S.W.2d 387, 397, 171 S.W.2d 69. Cases

dealing with various set of facts are Swift v. Kansas City Life Ins. Co., Mo.App., 184 S.W.2d 184; Williams v. Liberty National Life Ins. Co., 231 Mo.App. 239, 101 S.W.2d 109; Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 81 S.W.2d 313; Hawkins v. Washington Fidelity Nat'l Ins. Co., 230 Mo.App. 882, 78 S.W.2d 543, 547; Klinkhardt v. Crescent Ins. Co., Mo. App., 47 S.W.2d 210; Spencer v. Security Benefit Ass'n, Mo.App., 297 S.W. 989, 991; Newman v. John Hancock Mutual Life Ins. Co., 216 Mo.App. 180, 257 S.W. 190, 192; Murphy v. Brotherhood, Mo. App., 199 S.W. 730.

The fact situation to which the foregoing law as to abandonment and as to acquiescence is to be applied is, concisely, as follows: Acting through his father (his natural guardian and agent), annuitant had made known to the Company his desire and intention to change to an Old Line Life policy; had selected the form of policy; and had made known his willingness to comply with all conditions. The Company made known that any changed policy would include a "war clause." He insisted upon his right to a policy without this clause and refused to accept one containing it. The matter of elimination of this clause from a new policy was again taken up with the Company. In March 1944, the Company repeated its insistence upon inclusion of the clause and this was told the father. Again, the father insisted upon his position and reiterated willingness to comply with all requirements for the change. The father testified that, almost monthly thereafter, he continued to demand a new policy without the clause. Annuitant joined the Merchant Marine in June 1944 and never returned. Annuitant was killed in the service in April 1945. In December 1944, the time for payment of the annual premium came. The father paid the premium on the Annuity Policy under circumstances to be hereinafter set out. In June 1945, demand was made upon the Company for payment "of the amount of the policy to which you [the Company] should have exchanged annuity policy as requested * * *." In July 1945, the Company refused the demand because an-

nuitant "did not comply with the terms, provisions and conditions of said Annuity relating to change to other plans of insurance." This suit was filed in September, 1945.

From the foregoing fact situation, it is clear that there is no *inaction* by annuitant or his father for him which could be any basis for a claim that there was either acquiescence in the position of the Company by annuitant or an intention to abandon his insisted upon rights. Obviously, any further offers by him to perform would have been useless to secure the rights of change to which his contract entitled him. To the contrary, the father continued to insist upon this right to change. Failure to bring suit to compel the change during the three months before annuitant entered the Merchant Marine cannot be construed either as acquiescence or abandonment. After that time, inaction was ineffective under the statute. 50 U.S.C.A.Appendix, §§ 510, 522, 525.

As to any *action* affecting acquiescence or abandonment, the sole matter is the premium payment on the Annuity Policy in December 1944. Whether that payment was an act of acquiescence or of abandonment depends upon the circumstances bearing upon the intention of the father in making the payment. The sole evidence as to such circumstances comes from the father, in an affidavit and in a deposition, and is as follows:

"In December, 1944, I was faced with the problem of what to do about premium payments on behalf of Jay to the New York Life Insurance Company. (In view of the position which the company had taken in March it was obvious to me that it would be useless to reopen the argument about their obligation to exchange an ordinary life policy in accordance with our demand.)[1] Jay at that time was outside the United States in the course of his Merchant Marine duties, and I felt that in fairness to him I had to preserve his rights under the Annuity policy, which was the only one the company was then

recognizing. Therefore, in order to preserve Jay's rights under that policy and to avoid the possibility of the company later contending that Jay had no policy at all, I paid the premium on the annuity plan, which is the only premium payment which the company would have accepted."

Also, in a deposition, the father testified (in response to a question as to what he had done after a conversation with Rogell in March 1944) as follows:

"Yes, I demanded of him several times if he has done anything in regard to getting that transferred and before I paid the premium in December I had him to come down to the store and I told him that 'I am going to pay this premium to keep this policy active * * *, and he told me that was the proper thing to do."

Both acquiescence and abandonment are affirmative defenses. The burden of proof is upon the Company. These two preceding quotations do not sustain that burden nor overcome the presumption that legal rights are not abandoned. The situation here is, in effect, much similar to that in Maupin v. Missouri State Life Ins. Co., Mo.App., 214 S.W. 398, and compare Swift v. Kansas City Life Ins. Co., Mo.App., 184 S.W.2d 184. There payment of premium on an exchanged policy during a suit to reinstate the original policy was held not to be acquiescence in the position of the company that the exchanged policy was the only one in force.

### Conclusion.

The petition seeks recovery for vexatious delay and for attorney fees. We find no basis for such claim in the situation revealed by this record.

The case is remanded with directions to enter a decree for specific performance of exchange to an Old Line Life plan (such as issued by the Company on December 22, 1938) and for recovery upon the exchanged policy for $7151 (the amount thereof) less any balance of premium due thereon, with interest and costs.

[1] In the course of this affidavit of the father several parts are enclosed in parentheses and marked "stricken" on the margin opposite. This parenthesis is not so marked hence we assume it was not stricken. However, it is not important whether or not it was stricken as it represents a condition otherwise shown.